44 N.J. Super. 491 (1957)
130 A.2d 866
CHARLES ALAN PHILLIPS AND ELEANOR C. PHILLIPS, HIS WIFE, PLAINTIFFS-RESPONDENTS,
v.
BOARD OF ADJUSTMENT OF THE TOWN OF WESTFIELD, ETC., ET AL., DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued March 18, 1957.
Decided April 11, 1957.
*493 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Irwin J. Silverlight argued the cause for the defendant-appellant, Board of Adjustment of the Town of Westfield (Mr. Robert S. Snevily, attorney; Mr. Jack J. Camillo, attorney for defendants-appellants Eckert).
Mr. Ira C. Moore, Jr., argued the cause for the plaintiffs-respondents (Messrs. Whiting, Moore & Phillips, attorneys).
The opinion of the court was delivered by FREUND, J.A.D.
The defendants appeal from a judgment of the Law Division of this Court, setting aside resolutions adopted by the Board of Adjustment of the *494 Town of Westfield granting the application of the defendant, Margaret D. Eckert, for permission to erect a one-family dwelling on premises located on an unimproved street.
The facts are not in dispute. The defendants, Herbert R. Eckert, Sr. and Margaret D. Eckert, his wife, are the owners of two vacant lots known as No. 612 and No. 620 Maine Street, each having a frontage of 80 feet. These lots adjoin the rear of plaintiffs' corner residential property which fronts on Rahway Avenue and runs along Maine Street for a distance of 109 feet. Maine Street is a paper street dedicated and accepted by the municipality, and is shown on the town's master plan and tax map. For its entire length of 835 feet, it is unimproved, being neither paved nor curbed in accordance with town standards, and the area is described as being "overgrown" and "half-wooded." However, 20 lots, each 100 feet in depth and of various widths, have been laid out along it.
The Eckerts applied to the building inspector for permission to erect a one-family dwelling on No. 620. The application was denied for the reason that it was found to offend N.J.S.A. 40:55-1.39, which prohibits the grant of a permit to build a dwelling on an unimproved street. The Eckerts then appealed to the local board of adjustment under N.J.S.A. 40:55-1.40, which provides that:
"Where the enforcement of sections nine and ten of this act would entail practical difficulty or unnecessary hardship, or where the circumstances of the case do not require the structure to be related to a street, the applicant for the permit may appeal from the decision of the administrative officer having charge of the issuance of permits to the board of adjustment in any municipality which has established such a board, or, in municipalities where there is no board of adjustment to the governing body, and the same provisions shall apply to such appeals and to such board or body as are provided in cases of appeals in respect to zoning regulations. The board may in determining any such appeal, make reasonable exceptions and issue a permit subject to conditions that will assure adequate access for fire-fighting equipment, ambulances and other emergency vehicles necessary for the protection of health and safety and that will protect any future street layout shown on the official map or on a master plan of streets duly adopted by a planning *495 board. Where such master plan of streets exists, the board of adjustment or governing body, as the case may be, shall refer the application to the planning board for report and recommendation before taking action."
The "act" referred to in the forepart of this excerpt is the "Official Map and Building Permit Act," L. 1953, c. 434, p. 2186, of which section 11 is quoted. Its purpose is to provide for the establishment of official maps of municipalities, fixing, among other things, "the location and width of streets" and to regulate the issuance of building permits with reference to streets on which erection of buildings is to take place. It was adopted as part of a general legislative planning program which included the "Municipal Planning Act," L. 1953, c. 433, p. 2168, N.J.S.A. 40:55-1.1 et seq. Section 10 of the act here in question, N.J.S.A. 40:55-1.39, provides, so far as here material, "before any such permit [building permit] shall be issued, such street shall have been certified to be suitably improved to the satisfaction of the governing body * * *."
After referring the defendants' application to the planning board, the board of adjustment after a hearing granted the application upon the express condition that the Eckerts provide a pavement of road stone, 18 feet in width, along the center of Maine Street for access from Rahway Avenue, an improved street, to the Eckert lot, a distance of 270 feet to the westerly boundary of No. 620.
At the hearing before the board of adjustment the Eckerts' application was opposed by the plaintiffs, Phillips. The testimony taken at the hearing disclosed that although there is a sanitary sewer which runs through Maine Street, the town has no present intention to pave the street for some years, and that to pave the portion of it from Rahway Avenue to the far end of the Eckert lots would cost in excess of $5,000. The board made specific findings that (1) Maine Street is an accepted but unimproved street and is shown on the master plan of the Town of Westfield, and that no other practical access to Eckerts' property is available; (2) that it would be an unnecessary hardship to *496 compel Eckert to install full-width paving and curbing from Rahway Avenue to the end of his property at a cost in excess of $5,000; (3) that the enforcement of such a requirement would, because of the cost, deprive him of the use of his property; (4) that the stone roadway to be constructed will assure adequate access for fire-fighting equipment, ambulances and other emergency vehicles necessary for the protection of health and safety, and (5) that the exception will not be detrimental to the health, morals or public safety of the community.
Phillips instituted the present proceeding in lieu of prerogative writ to review the board's action in granting the Eckerts' application. The trial judge in his opinion conceded arguendo that the board was justified in finding from the evidence that the enforcement of the prohibitory section would in fact entail "practical difficulty or unnecessary hardship." We find adequate support for that finding, and hence it will not be disturbed. The record discloses that for the street to be paved and curbed in accordance with town standards, even if only to the end of Eckerts' property, the cost would be greatly disproportionate to the value of his lots. Yet it may well be that even if such a pavement were laid, it would not satisfy the requirement of N.J.S.A. 40:55-1.39, which specifies that "such street shall have been certified to be suitably improved." The term "street" has reference to the "street * * * duly placed on the official map" and would appear to include not merely the portion leading to the far end of the Eckert property, but the entire block. Accordingly, the cost of the improvement would be far in excess of even the $5,000 contemplated.
The court additionally found the evidence sufficient to support the board's finding that the condition upon which the exception was granted, namely, that the Eckerts provide a stone roadway 18 feet in width, would be adequate access to the lots for emergency equipment "necessary for the protection of health and safety" and would "protect any future street layout shown on the official map or on a master plan *497 of streets duly adopted by a planning board." We agree. However, the court found that since each lot owner on Maine Street could demonstrate with equal force the same "practical difficulty" and "unnecessary hardship," and so probably obtain the same exception, the result would be that Maine Street would never be properly improved as contemplated by the planning statute. Consequently, it vacated the board's action.
The effect of the court's ruling, as the trial judge stated, is to require not only that the application for an exception under N.J.S.A. 40:55-1.40 show "practical difficulty" or "unnecessary hardship," but that the applicant demonstrate that the situation complained of is peculiar to his property. While this requirement of peculiarity or unique circumstance is a familiar requisite for a zoning variance under N.J.S.A. 40:55-39, Beirn v. Morris, 14 N.J. 529, 535 (1954) we find no such requirement under N.J.S.A. 40:55-1.40. Nor can we agree that its inclusion in that section by implication was intended by the Legislature. We do not find "peculiarity" or "unique circumstancing" to be the theme of planning  the choice in planning is not whether a lot requires special consideration, but whether the local planning arrangement permits the eventual location of a street in the area considered, and, if so, whether the proposed temporary roadway suffices presently to provide "access for fire-fighting equipment, ambulances and other emergency vehicles * * *." That other lot owners on the street might be accorded like permits is not determinative. This is not an application for a grant at variance with an established or comprehensive plan, but rather a grant that "protect[s] any future street layout." Further, we do not agree that it is inevitable that if the exception is sustained, every other lot owner will necessarily be entitled to a similar exception. It is to be contemplated that as the street is built up and values increase accordingly, an improvement of the street by the municipality by assessment for benefits or otherwise is much more likely than at present. This would eliminate the presently existing hardship *498 situation and might properly warrant refusals of continuing applications to the board of adjustment.
In Brous v. Smith, 304 N.Y. 164, 106 N.E.2d 503 (Ct. App. 1952), the court, in holding constitutional a statute identical in its terms (sec. 1.40), stated that the proper procedure for the plaintiff-owner who sought to erect six one-family houses, where the improvement would be an expense far out of proportion to the cost of the building, was to apply for an exception. That decision is clearly applicable here.
Another consideration supports the same reasoning. The nature of the consequences of the granting of a variance from a zoning ordinance may be far different from those involved in an exception under the "Official Map and Building Permit Act," N.J.S.A. 40:55-1.30 et seq. A variance to permit a structure not in compliance with a zoning ordinance constitutes a permanent physical change in the area with perhaps all the deleterious consequences which may flow from an unwise administrative action in that regard. But permitting the erection of a dwelling on a lot on an unimproved street involves no permanent harmful consequence to the municipality. The municipality may at any time take action for the improvement of the street, either by special assessments against abutting property owners or at general public expense, or partly by each. The recipient of an exception such as was granted in the present case obtains no permanent immunity from such a future assessment, equitably levied, when the municipality decides to improve the street. Thus, the trial judge's fear of a blight comparable to that involved in spot zoning is without warrant.
The respondent argues that the result reached by the trial judge was required by the following clause in N.J.S.A. 40:55-1.40: "* * * and the same provisions shall apply to such appeals and to such board or body as are provided in cases of appeals in respect to zoning regulations." Does this legislative language intend that the board's power to grant an exception must be predicated upon a finding of each of the elements necessary for granting a zoning *499 variance under N.J.S.A. 40:55-39? Or does it mean merely that the procedural requirements under Article 3, "Zoning," R.S. 40:55-30 et seq., should apply as they do in zoning appeals? We think the statutory language clearly imports the latter alternative. It makes no pretext at qualifying the authority of the board to entertain an appeal in cases of "practical difficulty or unnecessary hardship" and to grant "reasonable exceptions" upon conditions which insure adequate access for emergency vehicles. Nor can we assume that the Legislature in adopting this statute contemporaneously with the most recent amendment to N.J.S.A. 40:55-39 (L. 1953, c. 288) but providing an entirely different formula as a standard for exceptions, intended that the elements for the two should be the same.
The attempt here to limit what the trial judge considered a "generous grant of power to the board" is not unlike the difficulty experienced following the amendment of section 39(d) of N.J.S.A. 40:55 to permit the board of adjustment to "recommend" zoning variances "for special reasons." See 9 Rutgers L. Rev. 697, 710 (1955). Considerable litigation ensued on the question of whether the expression "special reasons" included the more stringent requirement of "undue hardship" in section 39(c) of N.J.S.A. 40:55. Compare O'Connor v. Mayor and Council of Borough of North Arlington, 1 N.J. Super. 638 (Law Div. 1949); Boulevard Improvement Co. v. Academy Associates, 3 N.J. Super. 506, 513 (Law Div. 1949); and Gerkin v. Village of Ridgewood, 17 N.J. Super. 472, 478 (App. Div. 1952), with Beck v. Board of Adjustment of City of East Orange, 15 N.J. Super. 554, 560 (App. Div. 1951) and Monmouth Lumber Co. v. Ocean Township, 9 N.J. 64, 77 (1952). The Supreme Court in Ward v. Scott, 11 N.J. 117, 122 (1952) resolved the issues, stating that "The legislature deliberately withheld from subsection (d) the undue hardship requirement which it included in subsection (c), and we are not at liberty to disregard its clear statutory language and meaning." The same restraint must, of course, apply here. We cannot disregard the *500 statutory language nor decline to give significance to the Legislature's failure to make "unique circumstancing" a requisite for an exception. It is apparent that the Legislature did not intend the application of the Zoning Act and of the Official Map and Building Permit Act to be identical in all cases. Zoning and planning legislation is cognate and complementary, but each legislative provision is to be construed in the light of its own unique purposes and objects. For a discussion of the distinction between zoning and planning, see Mansfield & Swett, Inc., v. Town of West Orange, 120 N.J.L. 145, 149 (Sup. Ct. 1938).
Accordingly, we find the action of the board of adjustment was properly guided by the policy of the statute and therefore we are not disposed to substitute our judgment. Brandon v. Board of Com'rs of Town of Montclair, 124 N.J.L. 135 (Sup. Ct. 1940), affirmed 125 N.J.L. 367 (E. & A. 1940); Izenberg v. Board of Adjustment of City of Paterson, 35 N.J. Super. 583 (App. Div. 1955); Ward v. Scott, supra. The board of adjustment is familiar with the community's characteristics, the facilities for meeting emergencies that attend life in that community, and the adequacy of access for vehicles required to meet these emergencies. It is a matter for their sound discretion and experienced judgment, controlled by law and reason, Monmouth Lumber Co. v. Ocean Township, supra; Tomko v. Vissers, 21 N.J. 226, 237 (1956). The court will intervene only where the board's action is arbitrary, capricious or unreasonable, and we find none of these elements here present. Potts v. Board of Adjustment of Borough of Princeton, 133 N.J.L. 230, 238 (Sup. Ct. 1945); Preye v. Board of Adjustment of North Bergen, 22 N.J. Super. 161, 170 (App. Div. 1952), certification denied 11 N.J. 328 (1953); Mistretta v. City of Newark, 33 N.J. Super. 205, 213 (Law Div. 1954); Oliva v. City of Garfield, 1 N.J. 184, 189 (1948); Beirn v. Morris, supra.
The judgment declaring invalid the resolutions adopted by the board of adjustment and setting them aside is reversed.